UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVATORE ALBANI,<br><br>                Petitioner,<br><br>v.<br><br>ERIKA ALBANI,<br><br>                Respondent. | Case No.:  15cv1980 BTM<br><br>**ORDER** |

      On January 12, 2016, the Court granted Petitioner Salvatore Albani's ("Salvo") verified petition for the return of his daughter I.A. to Singapore. (ECF No. 67.) The Court subsequently ordered that Respondent Erika Albani ("Erika") return I.A. to Singapore within thirty days of the Court's decision. Currently before the Court is Erika's motion to stay the Court's return order pending appeal and for undertakings, (ECF No. 87), and the parties' joint motion regarding undertakings (ECF No. 99). The Court also requested supplemental briefing on Petitioner's prior request that the Court take judicial notice of a partial transcript from a state court proceeding. (ECF No. 90.) For the reasons discussed below, the Court **GRANTS** Petitioner's request for judicial notice and **DENIES** Respondent's motion to stay. Furthermore, the Court **GRANTS** the parties' joint motion regarding undertakings, but **DENIES** Erika's motion for additional undertakings.

# I. REQUEST FOR JUDICIAL NOTICE

Prior to the Court's decision in January, Salvo requested that the Court take judicial notice of a partial transcript from a state court proceeding. (See Partial Tr., attached as Ex. 3 to Pet'r's Resp. in Opp'n to Resp't's Mot., ECF No. 93.) In the state court proceeding, Erika requested a restraining order following an altercation with Salvo that took place during this proceeding. San Diego Superior Court Judge Pamela Parker denied Erika's request, finding that the evidence presented after a four day trial did not meet the preponderance of the evidence standard required for a restraining order. (Partial Tr. 48:28-49:3.)

Although this Court declined to take judicial notice of the partial transcript as it pertained to the Court's Findings of Fact and Conclusions of Law, the Court finds the transcript relevant to Erika's motion to stay the court's return order for the reasons discussed below. See infra section II.B.4. Therefore, the Court **GRANTS** Salvo's request.

# II. MOTION TO STAY

## A. Standard of Review

Courts are instructed to apply the four traditional stay factors when considering whether to grant a motion to stay. Chafin v. Chafin, 133 S. Ct. 1017, 1027 (2013). Courts must determine: (1) "whether the applicant has made a strong showing that [s]he is likely to succeed on the merits"; (2) "whether the applicant will be irreparably injured absent a stay"; (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding"; and (4) "where the public interest lies." Id. (quoting Nken v. Holder, 556 U.S. 418, 434 (2009)).

//
//
//

## B. Discussion

### *1. Likelihood of Success on the Merits*

Erika argues that she has a likelihood of succeeding on appeal. The Court disagrees. Some of the merit issues she raises are addressed below.

#### (a) Domicile

At closing arguments, Erika's attorney argued that Salvo's domicile was San Diego, not Singapore, and that returning I.A. to Singapore was therefore improper.

In Hague Convention cases, if the "petitioner moves permanently to the same country as the abductor, the petition is moot because no effective relief remains for [the court] to grant." Gaudin v. Remis, 379 F.3d 631, 636-37 (9th Cir. 2004). In Gaudin, the court approved the use of domicile to determine whether or not a petitioner moved permanently to the United States. Id. at 637. The court defined domicile as a person's "permanent home, where she resides with the intention to remain or to which she intends to return." Id. at 636. The court also noted that, "domicile may be changed by being physically present in a new jurisdiction with the intent to remain there." Id. at 636-37. Because the court found that the petitioner was not domiciled in the United States, the court held that the petitioner's Hague petition was not moot. Id. at 638.

Here, the Court found that Salvo moved to Singapore with the intent to remain in Singapore for an indefinite period of time. See Factual Findings, 27-28. Salvo did not move permanently to San Diego at any time during the proceedings. In finding that Salvo moved to Singapore with the intent to remain in Singapore, the Court implicitly determined that Salvo's domicile changed from San Diego to Singapore. Therefore, his petition is not moot.

#### (b) Habitual Residence

Erika argues that the Court mischaracterized or omitted evidence and erroneously found that the parties intended to move to Singapore when in fact

their intention was to return to San Diego after three to five years. Specifically, Erika argues that the statements she made to her family members and her employer, the conditions surrounding the move, and Salvo's job status prior to the move present facts that point to the couple's intent of returning to San Diego—not a settled intent to remain in Singapore indefinitely.

The Court found as a fact that Salvo and Erika intended and understood that the move to Singapore would be long-term. Although Salvo's initial employment status in Singapore was not tenured, the Court found that Salvo discussed tenure with his future (and now current) employer in Singapore, and relayed these discussions to Erika. The university and hospital in Singapore invested significant resources into moving Salvo's practice, which the Court found as indicative of intent that the move be long-term.

Moreover, although Erika told her former employer in San Diego that she would be returning in three to five years, the Court found that she was in fact hedging her bets in the event that Salvo grew unhappy with his position in Singapore. Regardless of what she may have said, the Court found that her intention and her understanding was that the move to Singapore was meant to be long-term.

Finally, Erika argues that because the Albanis retained ties to the United States, their intention was to return. It is true that the Court found as fact that both Salvo and Erika retained personal and professional ties to the United States. See Factual Findings, 12-15. However, the Court concluded that these ties did not overcome the parties' intention to move to Singapore for the indefinite future. Rather, any ties demonstrated the possibility that the parties might retire to San Diego at a later date. Id. at 30-31; see also Mozes v. Mozes, 239 F.3d 1067, 1074 (9th Cir. 2001) ("Being habitually resident in a place must mean that you are, in some sense, 'settled' there—but it need not mean that's where you plan to leave your bones.").

Erika questions how the Court could find that her intentions were different than her words. As the Court noted in its decision, the Court did not find much of Erika's testimony credible. Rather, the Court relied on witness testimony that the Court deemed credible. The Court understands that other witnesses testified on behalf of Erika at trial and that a description of their testimony is absent from the Court's decision. However, the Court considered all of the testimony and ultimately determined that testimony from many of Erika's witnesses was either cumulative or not credible.

### (c) Alleged Errors in the Court's Factual Findings

On page 13 of the Factual Findings, the Court stated that the Albanis purchased a car in Singapore. However, according to Erika, the car was not purchased but leased. On pages 34 and 35 of the Factual Findings, the Court stated that, "[I.A.] spent formidable years in Singapore, where she lived a full and active life." Erika is correct in pointing out that the Court meant "formative", not "formidable".

Although the Court wishes to correct this error, the Court's ultimate decision is not changed by the fact that the Albanis leased—not purchased—a car in Singapore. The Court concludes that Erika has not shown a likelihood of success on appeal.

### 2. Irreparable Injury to Erika

Erika argues that denying the stay will cause her irreparable injury because she is unable to return to Singapore on anything more than a tourist visa, she has no means of living and working in Singapore, and she has been I.A.'s primary caregiver.

As an initial matter, should Erika prevail on appeal, this Court will continue to have personal jurisdiction over Salvo. Thus, the Court may command Salvo to take action outside the United States, including returning I.A. for further proceedings. See Chafin, 133 S. Ct. at 1025. For the reasons set forth on the

record at the hearing on February 9, 2016, the Court finds that Salvo would obey an order to return I.A.

The Court recognizes that it will not be easy for Erika to move back to Singapore. However, given the Court's ultimate conclusion—that Erika wrongfully removed I.A. from her habitual residence—the Court does not find that Erika's potential financial difficulties amount to irreparable injury in light of the available judicial remedies to compel I.A.'s return should Erika succeed on appeal. See Rehder v. Rehder, No. C14-1242RAJ, 2014 WL 7240662, at *7 (W.D. Wash. Dec. 19, 2014); see also Mendoza v. Silva, 987 F. Supp. 2d 883, 908 (N.D. Iowa 2013). Furthermore, Salvo has agreed to honor the terms of the Deed of Separation should Erika return to Singapore—meaning Salvo will again pay Erika S$4,000 a month and agree to continue sharing equal custody.

Proceedings brought under the Hague Convention are not custody proceedings, and the Court refuses to engage in a determination of whether Erika or Salvo is more fit as a parent. See Rehder, 2014 WL 7240662, at *7. While Erika was likely I.A.'s primary caregiver during these proceedings, the parties shared custody of I.A. in Singapore, and Erika did not raise the grave risk defense at trial. Denying the motion to stay will not cause Erika irreparable injury.

### 3. Substantial Injury to I.A. and Salvo

Ultimately, "in every case under the Hague Convention, the well-being of a child is at stake . . . ." Chafin, 123 S. Ct. at 1027. Here, I.A. was removed from Singapore in July, the Court rendered its decision in January, and it is now February. Since July of last year, I.A. has been living with Erika in San Diego. The Court understands that I.A. has undoubtedly adjusted to living in the United States and that, should Erika succeed on appeal, I.A. will again be forced to move back across the Pacific Ocean. However, the harm caused by further delaying her return to Singapore outweighs any potential harm should she be required to return to the United States in the future.

Likewise, Salvo has been away from his daughter for over six months. Staying the return order will substantially harm his ability to reconnect with his young daughter. Although Salvo has greater financial means than Erika to travel from Singapore to the United States, he has already been forced to take numerous trans-Pacific trips in order to be physically present at the proceeding before this Court and the multiple actions filed by Erika in San Diego Superior Court.

Granting a stay pending Erika's appeal would cause substantial harm to Salvo and I.A.

### *4. Public Interest*

The purpose of the Hague Convention is to prevent the use of international borders to obtain custody during domestic disputes by securing the prompt return of children wrongfully removed from their State of habitual residence. See Hague Convention, Oct. 24, 1980, T.I.A.S. No. 11670, S. Treaty Doc. No. 99-11 ("Treaty Doc"), art. 1, § a. "The Convention and ICARA demonstrate a public interest in expeditious resolution of petitions for return of children, 'for the sake of the children who find themselves in such an unfortunate situation.'" Mendoza, 987 F. Supp. 2d at 909 (quoting Chafin, 133 S. Ct at 1027).

As noted above, the Court takes judicial notice of a partial transcript from a state court proceeding before San Diego Superior Court Judge Pamela Parker. In denying Erika's request for a restraining order, Judge Parker questioned Erika's credibility. Specifically, Judge Parker noted that Erika's testimony alleging physical violence from Salvo changed over the course of the proceedings. (Partial Tr. 46:8-13.) Moreover, Judge Parker opined that Erika's previous request for a domestic violence restraining order was both not credible and a "possible strategic move to keep the child away from the father." (Partial Tr. 46:16-20.)

//

Just as Judge Parker viewed Erika's requests for a restraining order as both not credible and an attempt to manipulate the proceedings in order to keep Salvo away from I.A., the Court is convinced that her actions here demonstrate a similar pattern. The Court did not find much of Erika's testimony credible. Furthermore, the Court is concerned that, in seeking an appeal, Erika is manipulating the judicial system in order to prolong her time with I.A.

Granting a stay in this case would be adverse to the purpose of the Hague Convention in securing the prompt return of children wrongfully removed from their habitual residence. The public interest in upholding the purpose of the Hague Convention favors denying Erika's request for a stay.

## C. Conclusion

Applying the factors to this case, Erika's motion to stay must be denied. First, Erika has not made a showing that she is likely to succeed on the merits of her appeal. Second, Erika would not suffer irreparable harm absent a stay because this Court will continue to have personal jurisdiction over Salvo. Third, further delay will only frustrate I.A.'s ability to adjust back to her life in Singapore, and would continue to prevent Salvo from exercising his rights as a father. Finally, the purpose of the Hague Convention—securing the prompt return of children wrongfully removed—supports denying the stay. Because the factors favor returning I.A. to Singapore during the appeal, Erika's motion to stay the Court's return order pending appeal is **DENIED**.

## III. MOTION FOR UNDERTAKINGS

The parties filed a joint motion for undertakings stipulating that, when Erika returns I.A. to Singapore, the parties will comply with the Deed of Separation. Erika's motion also requested additional undertakings for attorneys' fees for the

//

1 custody proceedings in Singapore, and that Salvo post a bond to ensure
2 compliance.
3    Additional undertakings are not proper in this case because Erika did not
4 raise a grave risk defense at trial. Undertakings allow "courts to conduct an
5 evaluation of the placement option and legal safeguards in the country of habitual
6 residence to preserve the child's safety while the courts of that country have the
7 opportunity to determine custody of the children within the physical boundaries of
8 their jurisdiction." Walsh v. Walsh, 221 F.3d 204, 219 (1st Cir. 2000). As such,
9 undertakings provide courts with a tool "to comply with the Convention's strong
10 presumption of a safe and speedy return of the wrongfully removed child."
11 Danaipour v. McLarey, 286 F.3d 1, 21 (1st Cir. 2002).
12    Erika did not argue the grave risk defense at trial. The Court has not
13 received any evidence, let alone clear and convincing evidence, see 22 U.S.C. §
14 9003(e)(2)(A), that returning I.A. to Singapore will result in a grave risk of harm to
15 her well-being. As such, it would be improper to impose additional undertakings
16 on Salvo following the Court's determination that I.A. was wrongfully removed
17 from his custody. See also Danaipour, 286 F.3d at 21 ("The court entertaining the
18 petition must recognize the limits of its authority and must focus on the particular
19 situation of the child in question in order to determine if the undertakings will
20 suffice to protect the child.").
21    For these reasons, the Court **GRANTS** the parties' joint motion stipulating
22 that the parties comply with the terms of the Deed of Separation, but **DENIES**
23 Erika's motion for additional undertakings.
24 //
25 //
26 //
27 //
28 //

## IV. CONCLUSION

For the reasons discussed above, the Court **ORDERS** as follows:

(1)  Petitioner's request for judicial notice is **GRANTED**;

(2)  Respondent's motion to stay the Court's return order is **DENIED**;

(3)  Respondent's motion for additional undertakings and bond is **DENIED**;

(4)  the parties' joint motion regarding undertakings is **GRANTED**.

The Court is aware that Erika has filed a notice of appeal. Although the Court denies Erika's motion to stay, the Court is inclined to delay the return order in order to provide the Ninth Circuit with an opportunity to review this decision while I.A. remains in San Diego. However, Erika must act immediately to minimize any harm to I.A. caused by further delaying her return to Singapore.

Therefore, Erika must request a stay from the Ninth Circuit by **12:00 p.m.** on **Tuesday, February 16, 2016**. Assuming she complies, the Court will extend the return order until **February 26, 2016**. On that date, unless ordered otherwise by the Ninth Circuit, the Court **ORDERS** that Erika return I.A. to Singapore.

Should Erika fail to meet the filing deadline, she must return I.A. to Singapore forthwith.

**IT IS SO ORDERED.**

Dated:  February 11, 2016

Barry Ted Moskowitz, Chief Judge
United States District Court