UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVATORE ALBANI,<br><br>                         Petitioner,<br><br>v.<br><br>ERIKA ALBANI,<br><br>                         Respondent. | Case No.:  15cv1980<br><br>**ORDER GRANTING IN PART PETITIONER'S MOTION FOR ATTORNEYS' FEES** |

Following a bench trial, the Court granted Petitioner Salvatore Albani's ("Salvo") Verified Petition for the return of his child I.A. to Singapore pursuant to the Hague Convention. Presently before the Court is Salvo's motion for attorneys' fees. For the reasons discussed below, the Court awards Salvo $196,498.50 in attorneys' fees.

## **I. Background**

On January 12, 2016, following a twelve-day bench trial, the Court ordered the return of I.A. to Singapore, finding that Respondent Erika Albani had wrongfully removed I.A. from her place of habitual residence. Erika requested a stay of the Court's Order pending an appeal to the Ninth Circuit, which the Court subsequently denied. Erika's appeal of the Court's return order is still pending.

Salvo requests $583,261.22 in attorneys' fees and costs. This initial figure includes costs related to the state court proceedings initiated by Erika in San Diego Superior Court. In her opposition brief, Erika argues that Salvo should only receive reimbursement for fees related to the Hague proceeding before this Court and that an award for the requested amount would be inappropriate given Salvo's financial status, the equities in this case, and the fact that Erika was solely responsible for supporting I.A. during the pendency of these proceedings. In Salvo's reply brief, Salvo's attorneys parsed out the expenses and highlighted the fees directly related to the federal proceeding.

## II. Discussion

Pursuant to the International Child Abduction Remedies Act ("ICARA"), "[a]ny court ordering the return of a child . . . shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs [and] legal fees . . . unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b)(3). This fee-shifting provision is meant to "restore the applicant to the financial position he or she would have been in had there been no removal or retention, as well as to deter such conduct from happening in the first place." Sullivan v. Sullivan, No. CV-09-545-S, 2010 WL 1651994, at *1 (D. Idaho Apr. 12, 2010). A proposed fee award is analyzed under the Ninth Circuit's fee-shifting case law, utilizing the "lodestar" method to calculate the reasonableness of the attorneys' fees. Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).

**A.   Necessary Expenses**

As an initial matter, Erika argues that any fee award should only include the fees directly related to the Hague proceeding. The Court agrees. Although the state court proceedings where initiated by Erika and would not have occurred but-for the wrongful removal in this case, awarding attorneys' fees for work done

for another case and before another court would be improper.

Second, the Court does not find it appropriate to award Salvo attorneys' fees for his entire team of attorneys. Erika was represented by a single attorney at trial, while Salvo employed a squadron of attorneys including two attorneys from New York and three attorneys from San Diego. Although the case was complex, five attorneys were unnecessary. As such, the Court only awards attorneys' fees for the work done by Amanda Harris and Richard Min. Mr. Min was the lead attorney and argued the case before the Court, and Ms. Harris was responsible for briefing the legal issues.

**B.     Reasonableness of Fee Award**

The "lodestar" method calculates a reasonable attorney fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. See Larrategui v. Laborde, No. 13-cv-1175 JAM, 2014 WL 2154477, at *2 (E.D. Cal. May 22, 2014).

Ms. Harris billed 228.6 hours and Mr. Min billed 311.73 hours on matters pertaining to this case.[1] Upon careful review of the declarations, and given that this case involved a twelve-day bench trial, hundreds of pages of exhibits, and multiple rounds of briefs, the Court concludes that the hours are reasonable.[2] Mr. Min billed his client at a rate of $300 per hour, and Ms. Harris billed at a rate of $450 per hour for the 2015 calendar year, and $455 per hour starting in 2016. Based on the declarations (see Decl. Robert Arenstein, ECF No. 77-6; Decl. Amanda Harris, ECF No. 113-1), and compared with Erika's attorney's rate of $440 per hour (see Decl. Ethan Marcus, ECF No. 77-3), the proposed hourly rates are reasonable. Using the lodestar method, the Court calculates

---

[1] The Court relied on the declarations and included only those hours designated by the attorneys as pertaining to this case. Pages 74-83 of Ms. Harris' Declaration were not considered because they were duplicates of pages 64-73.

[2] Erika's attorney also worked over 200 hours on this matter, given that his declaration states he billed $95,710.20 at a rate of $440 per hour. (See Decl. Ethan Marcus, ECF No. 103-2.)

1 $196,498.50 in attorneys' fees.[3]

2     A court can adjust the presumptively reasonable lodestar figure on the
3 basis of several factors, including:

4     (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (1) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

11 Ballen v. City of Redmond, 466 F.3d 746, 746 (9th Cir. 2006). However, as is the
12 case here, most of these factors are typically considered in the initial lodestar
13 calculation. Sullivan, 2010 WL 1651994, at *2. Therefore, adjusting the lodestar
14 figure is improper in this case.

15 **C.    Appropriateness of Award**

16     A court shall award attorneys' fees upon ordering the return of a child
17 "unless the respondent establishes that such order would be clearly
18 inappropriate." 22 U.S.C. § 9007(b)(3). Erika argues that Salvo's financial
19 position and certain equity interests make an award inappropriate. Erika also
20 asserts that she was solely responsible for supporting I.A. during the pendency of
21 these proceedings.

22     First, although Salvo is arguably in a better financial position than Erika
23 given his current salary and employment prospects, Salvo had to spend a
24 significant amount of money to secure I.A.'s return to Singapore. Furthermore, as
25 noted above, the fee award does not take into account the state-court

---

[3] The Court used the following calculation: (311.73 x $300) + (206.7 x $450) + (21.9 x $455) = $196,498.50

proceedings or the attorneys' fees for his entire legal team—only those for Mr. Min and Ms. Harris. Although the Court's fee award approaches $200,000, Salvo alleges to have spent over $500,000 to secure the return of his daughter.

Second, Erika insists that she had a good-faith belief that the United States was I.A.'s habitual residence. The Court disagrees. The Court found as fact that Erika understood the move to Singapore would be long term, and concluded that the family abandoned the United States and adopted Singapore as their new habitual residence. (See Findings of Fact and Conclusions of Law, ECF No. 67.) Moreover, the Court found that Erika's testimony lacked credibility and that her filings in the state court proceedings were an attempt to manipulate the judicial system in order to prolong her time with I.A. in the United States. (See Order Denying Motion to Stay, ECF No. 100.)

Erika also argues that any fee award should be reduced because of her financial condition. Several courts have declined to award attorneys' fees in light of a respondent's inability to pay. See Rehder v. Rehder, No. C14-1242RAJ, 2015 WL 4624030, at *3 (W.D. Wash. Aug. 3, 2015) (citing cases where courts did not award attorneys' feees). In Rehder, the court did not award a successful petitioner attorneys' fees, noting that the respondent made very little income, had less than $3,000 in her checking account, and paid for legal fees through loans. Id. at *4. Although Erika used loans to pay for her own attorneys' fees in this case, Erika is a trained physician with a much higher earning potential than the respondent in Rehder. Prior to these proceedings, she was employed in Singapore as a project manager, working part-time and making $5,000 a month in Singapore dollars.

Finally, the fact that Erika was solely responsible for supporting I.A. during these proceedings bears no weight. The Court concluded that Erika wrongfully removed I.A. from Singapore, and any expense she incurred having to care for I.A. was of her own doing. Prior to the removal, Salvo was supporting I.A. in

Singapore and providing a monthly allowance for Erika. If Erika did not want to support I.A. on her own, she should not have removed I.A. from Singapore in the first place. See Cuellar v. Joyce, 603 F.3d 1142, 1143 (9th Cir. 2010) (noting that if the respondent did not want to bear the cost of delaying the return of his child in a case that fell squarely within the Hague Convention, then the respondent should not have abducted the child in the first place).

### III. Conclusion

The dual purpose of ICARA's fee-shifting provision is to deter the wrongful removal of children from their place of habitual residence and to restore the petitioner to his or her financial position had there been no removal. See Sullivan, 2010 WL 1651994. In furtherance of this goal, and for the reasons discussed above, the Court awards Petitioner Salvatore Albani **$196,498.50** in attorneys' fees.

**IT IS SO ORDERED.**

Dated:  May 31, 2016

Barry Ted Moskowitz, Chief Judge
United States District Court